and John Knox. Mr. Meyer. Good morning. May it please the Court, Jeffrey Meyer from the Federal Defender Program on behalf of Nathaniel Clay and John Knox. The District Court erred in two respects when it denied Mr. Clay and Mr. Knox's motion for a sentence reduction under Section 404 of the First Step Act. The first error was when the District Court determined that Mr. Clay and Mr. Knox were not eligible based on their conviction because that conviction involved a conspiracy that constituted both crack cocaine and heroin. The government has now conceded that that was error and that concession is well taken. After this Court's McSwain, which is directly on point and came to the opposite conclusion that Judge Johnston came to. Unless the panel has questions on that issue, I'll turn directly to the only remaining disputed issue in the case, which is that Judge Johnston abused his discretion when he held in the alternative that he would not grant a sentence reduction under the Act. He would not use his discretion to grant a sentence reduction under the Act. Nothing in the First Step Act requires a district judge to reduce a sentence. We recognize that. But at a minimum, a judge must undertake the proper analysis when determining whether or not to exercise his discretion to reduce a sentence. And that involves two things. One, understanding what facts are available to the judge and also what the proper analysis the judge should undertake. And here, Judge Johnston erred in both regards. His opinion mentions multiple facts that he didn't have available to him. Specifically, of course, we're talking about the unwarranted disparity analysis under 3553A6. Judge Johnston takes issue with Judge Ellis' prior decisions to reduce the sentences of five of Clay and Knox's co-defendants, including people who were at the same level as Clay and Knox or above them in the conspiracy, and also including the undisputed sole leader organizer of the conspiracy. Judge Ellis, when she had the case before it was reassigned to Judge Johnston, substantially reduced the sentences of these five individuals. And when I say substantial, I mean approximately 25% on the low end for lower participants and upwards of 50% or more for people who were higher up in the conspiracy. When Judge Johnston issued his order and opinion denying Clay and Knox's motion, he took issue with Judge Ellis' reasoning. And actually, I shouldn't say that. He didn't take issue with Judge Ellis' reasoning. He said that he couldn't determine what her reasons were to reduce the sentences of the co-defendants. And that was sort of the end of it. He then didn't attempt to undertake an analysis of whether the disparity that no one denies exists now, whether that disparity was warranted or unwarranted. Judge Johnston had a great deal of information available to him, and he also had the ability to see that Judge Ellis had a great deal of information available to her. Judge Ellis issued lengthy, detailed opinions for each of the five co-defendants that she reduced. Those opinions cited things like the plea agreements, the sentencing transcripts, which were available for four of the defendants. So she did a very thorough job and laid out her reasoning very specifically. Judge Johnston had access to all of that material as well, and certainly if there was something he felt he was missing, he specifically singles out the pre-sentence reports for those co-defendants in his opinion. I don't think his point was that he was missing any information. I think his point was that Judge Ellis may have been missing some information. And that may have accounted for their difference of opinion. He's trying to explain why he's not reaching the same conclusion that she is. That she may have been operating under an information deficit because she didn't have the PSRs. And I suppose in one sense his language can be read that way, Judge? That's the most reasonable contextual reasoning. He's not complaining about a lack of evidence in front of him. He has everything he needs. So two things about that. One is he certainly is criticizing Judge Ellis, and I think he's doing so necessarily without a basis. The mere fact that the pre-sentence reports weren't docketed the way that Judge Johnston had them docketed doesn't mean that Judge Ellis did not have access to them. It doesn't mean that she didn't ask for them from the probation office. In fact, if you look at the docket for at least one of the defendants, that defendant's lawyer had made a motion to have the pre-sentence report released to him and to the government, and Judge Ellis granted that motion. So she was aware that the pre-sentence reports were out there and that she could have access to them. So I'm not sure it's a fair reading on Judge Johnston's part to say that Judge Ellis didn't have access to the pre-sentence reports or didn't review them, simply because she didn't cite them in her opinion. She cited the relevant information from other sources, from the plea agreements, from the sentencing transcripts, which are voluminous and are cited in her opinions. But more importantly, I think, Judge Johnston's coming at the analysis that he needed to perform, from the wrong direction. It wasn't Judge Johnston's position to determine whether Judge Ellis's decision was correct, and he seems to imply in his opinion that Judge Ellis was incorrect. That wasn't the analysis that he needed to undertake under the 3553A6 analysis. Those sentence reductions had happened. They were historical points. They were data points. They created a disparity. Everyone acknowledged the disparity. Even Judge Johnston acknowledged the disparity. The analysis that Judge Johnston should have undertaken was whether or not the new sentences and the disparity they created were justified based on the information he had with his defendants. And that's not what he does in his written opinion. If you look at the language that he included in his order for both Clay and Knox, he says that the court has done so, performed the 3553A analysis using all of the relevant information available to it. This court cannot know what information was available to any earlier judge who inherited this case from Judge Capalla. I don't think it's possible to reconcile those two statements. I don't think Judge Johnston could have performed an adequate 3553A6 analysis while acknowledging that he didn't know what information Judge Ellis had and saying that that was somehow important to his decision. Well, Mr. Meyer, he was pretty specific, though, on his own reasoning, wasn't he? He was, Judge. And he certainly went through the other 3553A6 factors. That's what I mean, yeah. However, federal sentencing is such a balancing act that all of the 3553A factors play an important part in it. And the way I sort of look at this is if you took an old-fashioned scale, like the scales of justice, and you took off one pan and all of its contents, like the 3553A6 analysis that Judge Johnston didn't undertake, the other side is going to come down to the ground. That doesn't necessarily mean that those factors outweigh the factor that was taken away. Without performing an adequate 3553A6 analysis, we really don't know how the other factors balance out. And it's without performing the analysis, which he didn't do, it's not possible to say that the other factors outweigh that factor. Particularly in a case like this, where one would think the 3553A6 factor would take on added importance because the disparity between the co-defendants after Judge Ellis' reductions is so great. But we actually have a whole body of case law that says that kind of sentencing disparity is not what A6 is getting at. And also that a sentence that conforms to the code of conduct guidelines, by definition, is not unduly disparate. That's true, Judge, but implicit in that analysis, implicit in that analysis, is an understanding that the analysis of the district judge was undertaken properly. And that's what didn't happen here. And for that, we look to Sanchez, United States v. Sanchez, where this court has said that when a district court misinterprets its abilities under 3553A6, that is error. And here, Judge Johnston misinterpreted his ability to perform a 3553A6 analysis because of factual and legal reasons. Unless the panel has any other questions, at this point I'll reserve the remainder of my time for rebuttal. And I please the court, Deborah Bonamici on behalf of the United States, good morning. Almost afternoon. The district court acted well within its discretion in declining to grant a reduction under Section 404 of the First Step Act in this case. The district court considered all the defendant's arguments and the 3553A factors that were relevant, as well as the differences that have been brought about by the Fair Sentencing Act appropriate for consideration in the context of Section 404. Contrary to the defendant's contention, the district court did not err in its consideration of the discretionary grants of reductions to other defendants by a different judge. The district court did not fail to consider those grants. In fact, the court expressly considered them. The district court said nothing to suggest that he believed that he could not consider the disparity created by those grants and a decision by him not to grant reductions, nor did the judge say anything to suggest that the judge felt incapable of making that kind of analysis. In fact, the district court had chosen to grant reductions to other co-defendants did not outweigh other factors that he deemed to be more important and also to militate against a reduction in the case of the defendants before him. The comments that he made about the prior judge, about the record before the prior judge, simply indicate his view that those opinions did not comport to his way of thinking. Those opinions did not comport to the record before him. That's all he was saying. It has in no way suggested that he was confused by it or that he thought that somehow that fact somehow impaired his ability to consider disparity in this case. Is there any obligation or requirement or finding that we, as a court, should be requesting of district judges to situate sentences like this in relation to other related sentences? It's kind of an abstract question, but I'm getting to the idea of if we're in a published opinion going to make a determination with regard to how close that connection should be, what are your thoughts on that? Right. Well, I think the court has spoken to that issue in the context of sentencing, of original sentencing, as Judge Sykes pointed out. There's a body of case law in this court that talks about that issue. With respect to the general concept of disparity, the court has strongly held that the guidelines are the anti-disparity function and applying a guideline sentence takes care of that piece. With respect to defendants in the same case, the guidelines also play a role there, as they did in this case originally, because each defendant was held accountable for a particular quantity of drugs. It wasn't the same across the board. And so an application of the guidelines prevented unwarranted disparities in their original sentences. So that was actually done and factored in in the original sentences. But that issue here is whether a district court judge exercising its discretion to reduce a sentence under Section 404 must consider and address the fact that other judges have reached different conclusions on the same or similar facts or with respect to other defendants in the same case. What we have here is a little bit of an unusual situation with two judges acting in a similar case. This happens sometimes. It's unusual. It happened here, obviously, due to the gap left by Judge Coppola's retirement and the time needed to confirm another judge to the bench in Rockford. But it does happen, but it's rare. So it's not going to be a common thing where two judges are issuing opinions on these motions to multiple defendants or to different defendants in the same case. But it really, there would be no basis in the law that would suggest that a court must consider every other district court's opinion on a similar topic or on similar facts in determining what to do on a particular case. There is... Let's narrow it down a bit, though. We've got the situation of motions being granted. We've got the circumstances of two district judges addressing defendants within a similar circle. Right. Could Judge Johnson have said, made reference to what Judge Ellis did, as long as Judge Johnson did everything else correctly? Well, the problem I think we would have in that situation is that the defendants raised it and it was one of their primary arguments, so I think there would be a different problem. But no, do I think that the judge had to consider that? I think that's an open question, because I'm not sure that it's clear that the context of sentence reduction is the same in this respect as the context of original sentencing. I don't see any case law that addresses that issue, and I think that's an open question. But let's just assume it is. Let's assume that any disparity of any kind at any time needs to be examined, at least if it's raised by the defendant. Let's just say that that's the case. Here, the only way that the court could consider that, according to the defendant, is by distinguishing these particular defendants' particular facts against the facts relied upon by the court in the earlier instance, which, in other words, the second judge's discretion would be cabined. That is essentially saying, you have to grant this reduction unless you can find a way to distinguish this case from those. And that's completely—I mean, to my knowledge, there's nothing in the law that would support that kind of cabining of the court's discretion. So I think the answer has to be no to your Why, since Judge Ellis had the case of Clay, right, did she just surrender the other case to Judge Johnson? Well, I don't know what goes on in the clerk's office directly, but here's what I surmise from the circumstances. I mean, there are lots of multi-defendant cases that have issues come up over time. They drag on for many, many years. They are in the group of cases that often get reassigned to new judges when they come on. And I don't know that the clerk's office makes any kind of inquiry as to whether there are open issues. You know, I think it's just the case got transferred. And I don't know that a judge would feel the need or should be required to in any way feel the need to hold on to them. I mean, I just don't think that it's—I think it's an administrative Well, the reason I'm asking is, is Judge Johnson looking only at Clay's work before Judge Ellis? Not Knox? Clay and Knox. Judge Johnson is only— So does Knox stand alone before Judge Johnson? Clay and Knox stood alone individually before Judge Johnson. They were consolidated for this appeal, but they were— Yeah, no, I understand that. So Judge Ellis made her decision on both defendants or just one? Judge Ellis made her decision on neither of the five other co-defendants. I understand that. She did not address— She didn't address any of these. No, no. These motions were pending at the time of the transfer. And so they were decided by the new judge after the transfer. Now, what could have—might have—happened? I mean, there might have been something done to undo the transfer, but it didn't happen, and there's no real reason to think that it should have happened. And it simply is the case that the court—actually, the court in the second—Judge Johnson exercised its discretion properly. I mean, Judge Johnson considered all of the issues, including the fact, by the way, that both these defendants were convicted of distributing or were held accountable for distributing huge amounts of heroin, and which—the penalties for which were not adjusted based on the Fair Sentencing Act, and that's—that in itself is a valid consideration. But that's not where he stopped the analysis. Judge Johnson went on and also analyzed in the case of one of the defendants, information that was provided with regard to positive prison conduct, noted that that kind of information was not presented by the other defendant. He made a full analysis. But it is the case that these two defendants, who are doing far more time than the kingpin, for example, based on Judge Ellis' reduction in his sentence. That's true. That's true. It appears somewhat arbitrary. The kingpin is serving 240 months based on her reduction. One of these defendants is serving 204 months based on a reduction under 3582C2. Okay. Judge—or Clay is serving more time than the kingpin is serving more time. But recall that the government pointed out early that Clay has not yet sought a reduction under 3582C2, and so Clay could seek that reduction and get a lower sentence. I don't think that it would take him down to 240, but the distinction would not be as great. Are you aware if other circuits have the same categorical rule that we do here, that the disparities that 3553A6C2 and 3583A6C2 have in terms of the number of cases that the court is concerned about are not disparities within a case? They're disparities across districts and judges. Well, I'm not, but I would also say to you, Judge Sykes, that it's not clear to me that all of the opinions from this court are clear or are as consistent about it. Understood. Okay. So there are cases that talk about the need to look at the multiple defendants, and they make sense. Even this distinction makes sense because in a case, it is true that you want to make sure that you're looking at all the defendants and you want to make sure that the sentences are fair across the board. Well, understood. Sentencing is an individualized endeavor. Exactly. That's just an argument to say this is not an unwarranted disparity. It doesn't justify a categorical rule, and I'm asking whether our categorical rule that that's not the kind of disparities that this section of the statute is concerned with. It is routinely encanted in these appeals, and then sometimes ignored by us. Right, but you could make the same argument. I mean, the arguments that support unwarranted disparity are the same arguments that would say this is a not fair sentence, right? Right, but it's a categorical rule that you're concerned about. Is that a sound rule? Is that a sound interpretation of the statute? In my judgment, the categorical rule as stated by this court, which cabins that rule by saying, it almost always includes a discussion about the use of the guidelines, that the guidelines make that unnecessary. Yeah, I'm not talking about the within guidelines sentence categorical rule. That's a different one. Right. I have not looked at the other circuits. I'm happy to do that. I've understood, and it's not raised in this case. Well, Ms. Bonamici, when you're creating a calendar for a new judge, if the government and the defense, in a case like this where you've had five reviewed by Judge Ellis, it seems to me there ought to be a system where you ought to keep the other defendants before the judge. I hear what you're saying, Judge, but I don't know why we would assume that judges, I mean, there are cases where you could make assumptions based on past track record that different judges will see things different ways. I'm not going to deny that, but I mean, generally speaking, the judges, I mean, you're making a suggestion to us that we should be aware of it, and I take that. No, I understand trying cases before a different, just when you split up the indictment, for whatever reason. Right. But it seems to me that we wouldn't have this comparative issue if five defendants have been sentenced by a judge, and the other two are then sent to create the calendar for a new judge. I mean, Judge Ellis had to be, somebody had to replace Judge Capel. Right, it was Judge Ellis. I understand that. Right. But we wouldn't have this problem of comparativeness if we had had. Right, I hear you, but I would say I'm not sure how much difference it really makes that these were, it feels different that these were defendants in the same case, but the reality is that the exercise of discretion on things like this on everything, if it differs between judges, it differs between judges, and the fact that you might have been indicted in one indictment rather than a different part of the same crew, maybe you're not. Maybe you're just a different crew, but there is an unfairness, a perceived unfairness when different judges reach different conclusions, but we do trust judges to exercise their discretion in an appropriate way. That's our system, and sometimes it... Well, I don't recall having this kind of comparative situation come up out of the same factual situation. I think it has. Has? Yes, and I think Judge Sykes mentioned a situation where, or maybe Judge Brennan mentioned a situation where there are multiple indictments, and it's the same crew, but it's different factions of the same crew of people, and so there really are separate cases. Sanchez. Sanchez. All right, thank you very much. Thank you. Thank you. We would ask that you affirm your opinions. Mr. Meyer, you had some time left. Thank you, Judge. I think the one area where the government and I agree on this is that this is a fairly unique factual situation that is not going to arise routinely, and just to clarify quickly the procedural posture, the five defendants who Judge Ellis reduced their sentence, that was done, these motions for Clay and Knox were fully briefed in front of Judge Ellis, and while they were pending, that's when the case was moved back to Rockford. I don't think, though, that we're asking for the expansive role the government says we're asking for. We're asking for something much more narrowly targeted. We're not asking this court to say to Judge Johnston, you got this wrong, you need to adjust these sentences based on disparity. We're asking this court to remand to Judge Johnston to undertake the proper analysis with disparity and make a decision when he has that information in front of him. So we would ask the court to reverse and remand.